Shauck, J.
Counsel for defendant in error cite as complete authority for the judgment under review, The C. & H. C. & I. Co. v. Tucker, 48 Ohio St., 41, and it is said that the case was so regarded in the courts below. In that case it was held that, where in the operation of a coal mine, coal slack, dirt and refuse are washed down upon the lands of a lower proprietor to his injury, an action lies to recover damages therefor, the deposits having been made intentionally upon the *272 defendant’s premises though made in the conduct of the business in accordance with the general practice in the operation of similar coal mines in the surrounding district. That case may not be full authority for the judgment of the courts below in the present case since it did not affirmatively appear there, as it does here, that the injury resulted from the careful pursuit by the defendant of the only known mode in which it was practicable to develop the mineral resources of its lands. While the facts upon which the original plaintiff counted in The Salem Iron Company v. Hyland et al., 74 Ohio St., 160, were substantially the same as those presented here, a different remedy was sought. In that case we concluded, that inasmuch as the plaintiff could not be entitled to a remedy in equity unless it could recover at law and the injuries complained of did not amount to an appropriation of its property, but merely constituted a nuisance which might be adequately compensated in damages, the equitable considerations presented would not justify us in rendering a decree which would in effect deny to the'defendants the opportunity of bringing to the surface and subjecting to use the petroleum underlying their lands. Whether the injuries which resulted to the plaintiff from the discharge of salt water into the flowing stream which it had been accustomed to use in its natural state of comparative purity was a burden to which the lower proprietor must submit without remedy, or was a proper subject for compensation in damages, was expressly left undetermined.
*273 The view which counsel for the plaintiff in error urges upon our attention is, that he has an. undoubted right to develop the resources of his land by bringing the underlying petroleum to the surface and preparing it for market, that throughout the Ohio field it is commingled with salt water from which it must be separated by pumping it into tanks and by drawing the salt water from beneath the petroleum after it rises, that the salt water can not be indefinitely confined, and that drainage effective to prevent its uniting with the fresh water of flowing streams can not stop short of the sea. The conclusion is, that since he is carefully exercising a right in the only known practicable mode he incurs no liability for the consequences which result. This view has won the approval of courts in a few of the cases contained in the reporter’s abstract of the briefs. Of these the leading case is Pennsylvania Coal Company v. Sanderson, 113 Pa. St., 126, which is not distinguishable from the present case by any fact of legal significance. Water necessarily developed in the operation of a coal mine was discharged into a stream which was the natural drainage of the basin and resulted in such a change in the character of the water of the stream as rendered it unfit for the uses to which it had been devoted by the lower proprietor when received in its natural state. Suit having been brought to recover for such injurjq the trial court took the view now urged by counsel for the plaintiff in error here and the judgment was adverse to the right to recover. In a proceeding in error in the supreme court the judgment was reversed, six *274 of the seven judges concurring. The view taken by the Supreme Court of Pennsylvania in that case, and elaborated in its opinion, is well expressed in the syllabus: “The invasion of an established right will in general per se constitute an injury for which damages are recoverable, for in all civil acts the intent of the actor is less regarded than the consecjuences to the party suffering. However laudable industry may be, its managers are still subject to the rule that their property, can not be so used as to inflict injury on the property of others.” This view of the law was applied to the following concrete case: S. purchased a tract of land in the coal regions, upon which he erected a handsome residence. One of the principal inducements to the purchase was that a stream of pure mountain water ran through the tract, and a number of valuable improvements were made in order that the residence and grounds might be supplied with water for culinary, bathing and other purposes. Shortly after these improvements were completed a mine was opened by defendant on the stream about two miles above the land of S., the water from which when pumped or flowing naturally therefrom ran into the stream and so polluted it as to render the water unfit for any of the uses to which S. had adapted it. Upon the above facts the court below entered a nonsuit, on the ground that in the absence of negligence or malice this was damnum absque injuria. Held, that S. had a right of action and the case should have been submitted to a jury. The harmony between the law of' England and that of the United States upon the subject was assumed, for *275 much reliance was placed upon the instruction given by Mr. Justice Mellor in St. Helen's Smelting Company v. Tipping, 11 H. L. Cases, 642, which had been approved in the Queen's Bench in the Exchequer Chamber and in the House of Lords. The judgment of the trial court in the Sanderson case, being reversed upon the view of the law above expressed, the case was remanded to the court of common pleas where it was again tried, the trial - resulting in a judgment for the plaintiff. The controversy of the parties appeared in the supreme court of the state upon three occasions in addition to the one already noted. In every instance the supreme court adhered to the right of the plaintiff to recover under the conditions stated, except the last which is reported in 113 Pa. St., page 126. In that case, four of the seven judges concurring, the doctrine previously announced was rejected and the court denied the right to recover. The condensed proposition expressing the later view of the court is as follows: Damages resulting to another, from the natural and lawful use of his land by the owner thereof are, in the absence of malice and negligence damnum absque injuria. One operating a coal mine in the ordinary and usual manner may upon his own lands drain or pump the water which percolates into the mine into a stream which forms the natural drainage of the basin in which the mine is situate, although the quantity of the water may thereby be increased and its quality so affected as to render it totally unfit for domestic purposes by the lower riparian owners. The use and enjoyment of a stream of pure water for *276 domestic purposes oy the lower riparian owners, who purchased their land, built their houses and laid out their grounds before the opening of the coal mine, the acidulated waters from which rendered the stream entirely useless for domestic purposes, must ex necessitate give way to the interests of the community, in order to permit the development of the natural resources of the country and to make possible the prosecution of the lawful business of mining coal. The final conclusion was reached by a nearly equally divided court, and the change of view apparently resulted from changes in the composition of the court. The case, though obviously weak as an authority, seems to have had much to do with the decisions in Barnard v. Sherley, 135 Ind., 547, and 151 Ind., 160. But the final judgment in that case was based upon an elaborate finding of facts .from which, in connection with the opinion, it appears that the conclusion was also much influenced by the consideration that the lower proprietor’s right to recover is only for injuries of a substantial character which have been caused by the defendant, and that it does not extend to such promiscuous and general consequences as unavoidably attend the substitution of urban for rural conditions.
The Sanderson case was a manifest departure from the rule of law often stated, and generally regarded as well settled, that although there is a servitude upon the lower proprietor to receive the natural flow of water from higher grounds, it is his right to receive it in its natural state and without deleterious change effected by artificial means. The case was cited as an authority in John Young *277 & Company v. The Bankier Distillery Company, App. Cases, 1893, page 691, where Lord Watson said of it: “Against the principle the appellants were able to cite only one American case, which I do not notice further, because it was decided on the express ground that in so far as concerns the present question, the law of Pennsylvania essentially differs from the law of England.” In another opinion in the same case it was said that Coal Company v. Sanderson proceeded upon considerations which characterize making law rather than interpreting the law so as to give effect to sound, just and well recognized principles as to the common interest and rights of upper and lower proprietors in the running water of a stream. This criticism seems to be justified by the attention which was given to considerations which tended to obscure, rather than make clear, the settled principles of the law. It is familiar that one who merely exercises a right is not liable for the consequences which result to another, even though he is prompted by malice, and that the motive which prompts one to a wrongful act may determine whether he is liable for exemplary or only actual damages. But was it ever before considerately held that one who invades the rights of another is not liable for such actual damages as ensue merely because the act was not done maliciously? An erroneous conclusion would naturally issue from such confusion of legal and theological considerations. Nor did the court limit the opportunities for the intervention of error when it turned its attention from the legal principles which *278 it, with other courts of this country and England, had often declared, and permitted itself to become concerned regarding the interests of the community and the extent to which public interests might be impaired if, in cases of this character, it should continue in the familiar course of adjudication. However numerous may be the persons who engage in mining- for coal and petroleum, however laudable may be their undertakings, these are but private 'enterprises instituted and conducted for private gain which may be acquired only with due regard to the rights of lower proprietors, whose numbers must always at least equal theirs, and in accordance with the principles upon which all titles are held. Without further exposition of this familiar subject, notwithstanding a few cases to the contrary, we adhere to the established rule upon the subject which is expressed in the syllabus. This case considered in connection with The Salem Iron Company v. Hyland et al., places us in the position of holding, that in cases of this character where the invasion of the rights of the lower proprietor does not amount to an appropriation of his property, but merely constitutes a nuisance, an injunction- will not be allowed to prevent the development of the resources of the lands of the upper owner, but that an action will lie for the recovery of such substantial damages as the lower proprietor may sustain by reason of such operations. With that position we are content since it seems to regard all the principles which the rights of the parties require us to recognize. The judgment in the present case *279 appears to have been carefully restricted to the actual injuries sustained by the original plaintiff and it will be affirmed.

Judgment affirmed.

Crew, C. J., Summers, Spear, Davis - and Price, JJ., concur.